## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL ROGEL, by and through its personal representative, MARY ROGEL, | CV-24-034-BU-BMM |
| Plaintiff, | **ORDER** |
| vs. | |
| BOZEMAN POLICE DEPARTMENT, JUSTIN CHAFFINS, ZACHARY GARFIELD, HANNAH HELSBY, RYAN JEPPSON, JAMES MARBICH, JON OGDEN, SHAR TORESDAHL, CODY YBARRA, and JOHN DOE DEFENDANTS 1-100, | |
| Defendants. | |

### INTRODUCTION

Plaintiff Mary Rogel, as a Personal Representative for the Estate of Michael Rogel ("Rogel"), deceased, filed a wrongful death action against Bozeman Police Department ("BPD"), Officer Jon Ogden ("Ogden"), and seven other named Officers ("Officers"), (collectively "Defendants") on May 21, 2024. (Doc. 1.) Defendants, respectively, filed motions to dismiss on July 16, 18, and 19, 2024.

1

(Doc. 15; Doc. 19; Doc. 21.) Plaintiff Rogel opposes those motions, in part. (Doc. 26.)

## BACKGROUND

Rogel lived in Bozeman, Montana. (Doc. 1, ¶ 19.) Rogel suffered a mental health emergency at his home on April 3, 2023. (*Id.*, ¶¶ 19–23.)  Rogel called 911 seeking help. (*Id.*, ¶ 20.) Rogel's mother also called 911 informing the dispatcher of Rogel's mental health condition and requesting help for him. (*Id.*, ¶¶ 25–26.) Rogel left his home in his car with his dog before BPD responded. (*Id.*, ¶ 35.) BPD pursued Rogel until Rogel's car became stuck in a snowbank at the end of a cul-de-sac. (*Id.*, ¶¶ 36–37.) BPD did not deploy their Special Response Team ("SRT") or Bearcat, BPD's armored truck, in response to Rogel's call. (*Id.*, ¶¶ 30–32.)

BPD officers drew their weapons and positioned themselves on the passenger side of Rogel's car. (*Id.*, ¶ 42.) BPD officers communicated with Rogel for approximately 30 minutes before officers fired non-lethal and lethal rounds into Rogel's car. (*Id.*, ¶¶ 41, 56–58, 73.) Rogel and his dog died at the scene. (*Id.*, ¶ 77.) Rogel had a firearm in his car. (*Id.*, ¶ 80.)  The firearm was not loaded, and Rogel had no ammunition. (*Id.*)

Rogel's Estate has brought claims against Defendants for violation of his U.S. Constitutional rights under 42 U.S.C. § 1983, Fourth and Fourteenth Amendments,

Montana Constitutional rights under Article II, §§ 3, 4, and 17, negligence, assault and battery, and infliction of emotional distress. (*Id.*, ¶¶ 112–90.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

**DISCUSSION**

BPD moves the Court to dismiss four of Rogel's claims: Rogel's Equal Protection violations under 42 U.S.C. § 1983, negligence per se, Montana Constitutional violations, and BPD's direct liability for negligent hiring, training, retention, supervision, and discipline of officers. (Doc. 15 at 2–3.) Defendant Officers and Defendant Ogden additionally assert immunity from Rogel's state law claims under Mont. Code Ann. § 2-9-305. (Doc. 19 at 18–20; Doc. 21 at 9–11.) Defendant Ogden also asserts that qualified immunity shields him against Rogel's § 1983 claims. (Doc. 19 at 10–16.) The Court will address each issue in turn.

## I.     Equal Protection claims

The parties agree that Rogel has no valid Equal Protection claim against Defendants. (Doc. 26 at 12–14.) The Court will grant the Defendants' motion to dismiss the Equal Protection claim.

## II.    Negligence Per Se claims

Rogel alleges in a single paragraph of the Complaint that Defendants' actions constitute negligence per se. (Doc. 1, ¶ 175.) Rogel points to no specific statute to

4

provide the basis for this allegation. (*See id.*) Rogel provides no substantive case law to support a negligence per se claim. (Doc. 26 at 14–15.) Rogel cites instead the U.S. Constitution, several Montana criminal statutes, and Montana's wrongful death statute to assert Defendants acted with negligence per se. (*See id.*) Rogel's Complaint refers only to Montana's wrongful death and survivor statutes. (Doc. 1, ¶ 111.) Rogel provided the Court with no case law at oral argument to support Rogel's negligence per se claims. (Doc. 37.)

Negligence per se in Montana requires proof of the following elements:

> (1) the defendant violated a particular statute; (2) the Legislature intended the statute to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the Legislature intended the statute to prevent plaintiff's injury; and (5) the Legislature intended the statute to regulate a member of defendant's class.

*Olson v. Shumaker Trucking & Excavating Contractors, Inc.*, 196 P.3d 1265, 1277 (Mont. 2008) (internal citation omitted). Establishing the existence of negligence per se settles only the questions of duty and breach. A plaintiff still must prove causation before being entitled to recover. *Id.*

Montana's wrongful death statue provides "for two separate causes of action for survivors of a decedent whose death is caused by the negligence of another." *In re Estate of Lambert*, 143 P.3d 426, 429 (Mont. 2006). Section 27–1–501, Mont. Code Ann. allows for a survival cause of action to provide damages for pain and suffering endured by the decedent in the time between the incident and the

decedent's death. Section § 27–1–513, Mont. Code Ann. provides for a wrongful death action. Rogel appears to have died instantly so the Estate pursues a wrongful death action. Montana's wrongful death statute provides no apparent basis for application of negligence per se as violation of the wrongful death statute is not what gives rise to the action. *Olson*, 196 P.3d at 1277. The underlying negligent conduct instead gives rise to the action. Rogel fails to plead underlying conduct by Defendants that qualifies as negligence per se. The Court will dismiss Rogel's negligence per se claim.

### III.   Montana Constitutional claims

Rogel contends that his Montana Constitutional claims should be allowed for three reasons. (Doc. 15 at 15–18.) Rogel argues that a distinction exists between wrongs committed by a private actor and wrongs committed by a state actor. (*Id.* at 15–16.) Rogel asserts that common law remedies prove inadequate to redress the harm caused by state actors because the injury differs from the injury caused by a private actor. (*Id.* at 16.) Rogel argues second that claims based on the Montana Constitution stand distinct from his negligence claim because they seek to hold the government accountable. (*Id.* at 17.) Rogel argues third that the Montana Constitutional claims allow for the recovery of attorney's fees, while negligence does not. (*Id.*) The Court finds Rogel's arguments unpersuasive. Claims based on

alleged violations of specific provisions of the Montana Constitutional remain unavailable where remedies exist under statutory and common law.

The Montana Supreme Court recently confirmed that if "plaintiffs [can] vindicate their rights through an alternate remedy, a constitutional remedy need not be employed." *Estate of Frazier v. Miller*, 484 P.3d 912, 922 (Mont. 2021). Rogel bears the burden of proving "how common law or statutory remedies would not adequately address any potential damages." *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, Ltd. Liab. Co.*, 228 P.3d 1134, 1442 (Mont. 2010). The availability of an alternative remedy, rather than the ultimate success on the merits, precludes a distinct constitutional cause of action. *Id*.

A negligence claim may constitute an adequate alternate remedy in certain cases concerning alleged due process violations, unreasonable search and seizure, and privacy constitutional injuries. *Estate of Frazier*, 484 P.3d at 922. An adequate remedy exists, for example, when a "negligence claim . . . essentially encompasse[s] the same standards a jury would use in consideration of the . . . proffered constitutional tort claim." *Id.* The Montana Supreme Court evaluated the adequacy of the negligence claim by assessing whether a trial court permitted the plaintiff to present constitutional arguments, evidence, and jury instructions regarding the constitutional duty of care owed by a state actor. *Id.*

Rogel's negligence claim could encompass the standards necessary to prove his state constitutional claims. Rogel's Complaint does not allege that his negligence claims differ from the state constitutional claims. (Doc. 1, ¶¶ 155–66.) Rogel alleges, in fact, that the constitutional rights establish a duty of care for the negligence claims. (*Id.*, ¶ 169.) Rogel further admits that monetary damages would provide an adequate remedy for violation of constitutional rights and fails to explain how those monetary remedies might differ from those under his negligence claim. (*Id.*, ¶¶ 161–66.) The Court will grant Defendants' motion to dismiss regarding Rogel's Montana Constitutional claims where Rogel's negligence claims provide an adequate remedy. *Estate of Frazier*, 484 P.3d at 922.

## IV.   Claim against BPD for negligent hiring, training, retention, supervision, and discipline of its officers

BPD argues that BPD's vicarious liability for its officers' conduct nullifies Rogel's negligent hiring, training, retention, supervision, and discipline claim. (Doc. 15 at 12–14.) The Court agrees. To allow such a claim to move forward would duplicate other claims and would prejudice BPD.

The Montana Supreme Court has not addressed the issue of whether a claim for negligent hiring, training, retention, supervision, and discipline would be precluded if an employer admits to vicarious liability. *See Parrick v. FedEx Grounds Package Sys.*, 2010 U.S. Dist. LEXIS 47729, at *4–7 (D. Mont., Apr. 21, 2010). When a "state's highest court has not decided an issue, that task of the

federal courts is to predict how the state high court would resolve it." *Id.* at *2 (quoting *Ticknor v. Choice Hotels Intern, Inc.,* 256 F.3d 931, 939 (9th Cir. 2001) (internal quotations and citations omitted). The District of Montana previously has found a claim for negligent hiring, training, retention, supervision, and discipline to be precluded when an employer admits to vicarious liability. *Parrick*, at *3.

Jerry Parrick was killed by a tractor-trailer that was being operated on behalf of FedEx. *Id.* at *1. Parrick's estate sued FedEx for negligence and negligent hiring and retention, among other claims. *Id.* FedEx admitted to vicarious liability for any negligence claims. *Id.* The district court reasoned that a negligent hiring and retention claim would be precluded when the plaintiff did not plead punitive damages against the employer but did against the individual employee because the claim would duplicate claims against the defendant employer cause and cause prejudice to the defendant employer. *Id.* at *4–9; *see also Mann v. Redman Van & Storage Co.*, 2011 U.S. Dist. LEXIS 132513, at *6–8 (D. Mont. Oct. 17, 2011) (adopting *Parrick's* reasoning).

Rogel does not allege punitive damages against BPD but rather seeks punitive damages against the individual officers. (Doc. 1, ¶¶ 191–95.) Rogel's negligent hiring, training, retention, supervision, and discipline claim thus would be duplicate claims against BPD and prejudice BPD where BPD admits vicarious liability. (Doc. 1, ¶¶ 170–71; Doc. 15, at 12–14.)

## V.     Mont. Code Ann. § 2-9-305

Rogel argues that MCA § 2-9-305 requires BPD to indemnify Defendant Officers in the present action to prevent double recovery, but it does not create complete immunity for the Officers. (Doc. 26 at 20–21.) Rogel argues additionally that MCA § 2-9-305 only offers immunity when the actions of the government employee and the governmental entity arise from the same conduct. (*Id.* at 22–23.) Rogel contends BPD's actions and Defendant Ogden's and Defendant Officers' actions stand separate and distinct because they occurred at different times. (*Id.*) The Court disagrees.

The relevant section of Mont. Code Ann. § 2-9-305(2) provides that in a civil action against a city the governmental entity employer "shall defend the action on behalf of the employee and indemnify the employee," including alleged violations of civil rights pursuant to 42 U.S.C. 1983, which the "the employee committed while acting within the course and scope of the employee's office or employment."  Mont. Code Ann. § 2-9-305(5), in turn, specifically prohibits double recovery for the same conduct from the government employee:

> Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence . . . or other actionable conduct gave rise to the claim. In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a

10

judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).

The Montana Supreme Court specifically has recognized that § 2-9-305 prohibits double recovery when both the governmental entity and government employees are proper defendants and the conduct of the two defendants are the same. *Story v. City of Bozeman*, 856 P.2d 202, 210-11 (Mont. 1993); *see also Kiely Const., L.L.C. v. City of Red Lodge*, 57 P.3d 836, 854-55 (Mont. 2002) (finding § 2-9-305 bars double recovery "from *both* governmental entity and the individuals acting on behalf of that entity for the same conduct."). Rogel contends the analysis ends there. Rogel adequately alleges that BPD's conduct and Defendant Ogden's and Defendant Officers' conduct differs. (Doc. 26 at 20–22; Doc. 1, ¶¶ 120–154.)

The issue here turns on the interpretation of MCA § 2-9-305(5). The Montana Supreme Court has determined that MCA § 2-9-305(5) "serves as a complete bar to holding [individual employees] liable because it provides immunity from suit to individually-named defendants for actions performed within the course and scope of the official's employment." *Griffith v. Butte School Dist.*, 244 P.3d 321, 335 (Mont. 2010); *see also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006) ("The explicit grant of immunity in the second sentence of § 2-9-305(5), MCA, belies [the plaintiff's] contention that the statute serves merely as an anti-double recovery statute."); *Kiely Constr., LLC v. City of Red Lodge*, 57 P.3d

836, 855 (Mont. 2002) ("[W]e conclude the first sentence of § 2-9-305(5), MCA, is on its face, a complete bar to holding the individual council members liable.").

The District of Montana likewise recognizes that MCA § 2-9-305(5) provides immunity. *See e.g. Marten v. Haire*, 2019 U.S. Dist. LEXIS 70120, at *7– 9 (D. Mont. April 25, 2019) (rejecting argument that § 2-9-305(5) only provides immunity from recovery if the State is ordered to pay damages and does not provide immunity from suit); *Estate of Ramirez v. City of Billings*, 2019 U.S. Dist. LEXIS 14896, at *27–31 (D. Mont. Jan. 30, 2019) (same); *Todd v. Baker*, 2012 U.S. Dist. LEXIS 77381, at *34–36  (D. Mont. June 4, 2012) (finding law enforcement officers entitled to immunity under § 2-9-305(5) at summary judgment stage); *Russo-Wood v. Yellowstone Cty.*, 2019 U.S. Dist. LEXIS 37034, at *17–20 (D. Mont. March 7, 2019) (same); *Estate of O'Brien v. City of Livingston*, 2020 U.S. Dist. LEXIS 44259, at *24–26 (D. Mont. Jan. 22, 2020) findings and recommendation adopted by 2020 U.S. Dist. LEXIS 41663 (D. Mont. March 10, 2020) (same).

Immunity under § 2-9-205(5) attaches when a plaintiff names the government entity as a defendant and the government entity acknowledges or is bound by a judicial determination that the employee's conduct upon which the claim was brought arose out of the course and scope of their employment. Mont. Code Ann. § 2-9-205(5). Rogel has named BPD, a government entity, as a

Defendant. Rogel's allegations against Defendant Ogden and other Defendant Officers all are based on actions they performed while in the course and scope of their employment as law enforcement officers during their response to Rogel's 911 call. BPD also has acknowledged that Defendant Ogden and Defendant Officers were acting in the course and scope of their employment as related to the incident with Rogel. (Doc. 15 at 12–13.) Defendant Ogden and the other Defendant Officers are immune from individual liability to Rogel's state law claims under § 2-9-205(5). *Marten*, at *7–9.

## VI.    Qualified Immunity

Defendant Ogden argues that qualified immunity protects him against Rogel's § 1983 claims of excessive force and due process violations because his conduct was not unlawful or unreasonable. In other words, a reasonable officer in Defendant Ogden's position would not have known that their actions violated Rogel's rights. (Doc. 19 at 6–8.) Defendant Ogden addresses the excessive force claim by analyzing four factors: quantum of force, severity of the crime, whether the suspect was evading arrest, and whether the suspect posed an immediate threat to the safety of officers or others. (*Id.* at 10–13.) Defendant Ogden contends that Rogel fails to allege that Defendant Ogden used any force. (*Id.*) Defendant Ogden addresses Rogel's due process claim by arguing that he did not act with deliberate indifference in such a

way that deprived Rogel of due process. (*Id.* at 13–16.) The Court agrees that qualified immunity protects Defendant Ogden.

Qualified immunity remains available to government actors performing discretionary functions even if the performance of those functions deprives a plaintiff of a constitutional right. Qualified immunity shields these actors from lawsuits for damages if a reasonable official could have believed their conduct was lawful considering clearly established law and the information possessed by the official. *Anderson v. Creighton*, 483 U.S. 635, 637-39, 641 (1987); s*ee also KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). A court considers two factors when determining whether qualified immunity exists in a case: (1) whether the plaintiff alleged a constitutional violation; and (2) if so, whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

The Court struggles to draw a reasonable inference that Rogel has alleged a constitutional violation against Defendant Ogden. Rogel's factual allegations against Defendant Ogden consist of failing to activate the SRT and Bearcat, his own body cam, and BPD's failure to activate the Bearcat's dashcam. (Doc. 1, ¶¶ 30–34, 67,

14

69.) Ogden's inactions fail to support overcoming the first prong of qualified immunity.

Rogel additionally argues that the state-created danger exception provides an alternative theory to hold Defendant Ogden accountable for having violated Rogel's right to due process. (Doc. 26 at 24-25.) Rogel argues the state-created exception applies to Defendant Ogden's deliberate indifference in failing to deploy BPD's SRT and Bearcat when the deployment would have protected Rogel from excessive force. (Doc. 26 at 23–25.) The state-created danger exception requires showing two elements: (1) a danger created by an affirmative act of the state and (2) deliberate indifference. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062–65 (9th Cir. 2006).

The Court first must examine "whether [] [Defendant Ogden] left [Rogel] in a situation that was more dangerous than the one in which they found him." *Munger v. City of Glasgow,* 227 F.3d 1082, 1086 (9th Cir. 2000). Defendant Ogden's choice not to proactively deploy the SRT and Bearcat did not place Rogel in a more dangerous situation even when drawing the factual inferences in favor of Rogel. BPD responded to Rogel's 911 call. Defendant Ogden's choice not to deploy the SRT and Bearcat represented a tactical choice that may or may not have allowed for de-escalation. BPD officers may have had cover and time to de-escalate the situation had Defendant Ogden deployed the SRT and Bearcat. Regardless of Defendant Ogden's choice whether to deploy the SRT and Bearcat, Rogel would not have been

15

placed in a *more* dangerous situation. Defendant Ogden's choice to delay the SRT and Bearcat fails to meet the first element to constitute a state created danger. Rogel fails to prove the second element even if the Court were to entertain that the first prong has been met.

The second requirement asks whether Defendant Ogden acted with deliberate indifference in choosing not to deploy the SRT and Bearcat. *Kennedy*, 439 F.3d at 1064. Deliberate indifference involves a stringent standard and requires proof that Ogden disregarded a known or obvious consequence of his action. *Id.* (quoting *Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Drawing the factual inferences again in favor of Rogel, Rogel fails to allege that Defendant Ogden acted with deliberate indifference. Rogel only alleges that Defendant Ogden failed to proactively deploy the SRT and Bearcat after Officer Toresdahl declined Defendant Ogden's offer of assistance. (Doc. 1, ¶¶ 30, 32.)

Rogel finally asserts that qualified immunity applies only to suits for damages and not for declaratory relief. (Doc. 26 at 25–26.) The Court agrees. *See e.g., Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993) ("[q]ualified immunity . . . does not bar actions for declaratory or injunctive relief." (quoting *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir.1991))). The Court will dismiss Rogel's monetary claims against Ogden under § 1983 and allow Rogel's declaratory relief claims to proceed.

16

## CONCLUSION

The Court determines that Rogel's Equal Protection, negligence per se, and Montana Constitutional claims should be dismissed. The Court determines further that Rogel's claim against BPD for negligent hiring, training, retention, supervision, and discipline of its officers should be dismissed because BPD admits to vicarious liability. The Court finds that Mont. Code Ann. § 2-9-305 provides immunity to Defendant Officers and Defendant Ogden. The Court finally determines that qualified immunity protects Defendant Ogden from liability against Rogel's § 1983 monetary claims.

## ORDER

Accordingly, **IT IS ORDERED:**

1.) Defendant BPD's Motion to Dismiss (Doc. 14) is **GRANTED**.

2.) Defendant Officer Ogden's Motion to Dismiss (Doc. 18) is **GRANTED in part**.

3.) Defendant Officer's Motion to Dismiss (Doc. 20) is **GRANTED**.

4.) Plaintiff's Equal Protection claim, Negligence Per Se claims, and Montana Constitutional claims against Defendants are hereby **DISMISSED** without prejudice. Plaintiff's state law claims against Defendant Officers and Ogden are **DISMISSED** without prejudice.

Plaintiff's § 1983 claims against Officer Ogden are hereby **DISMISSED, in part,** without prejudice.

DATED this 18th day of November, 2024.

Brian Morris, Chief District Judge
United States District Court