# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL ROGEL, by and through its personal representative, MARY ROGEL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BOZEMAN, JUSTIN CHAFFINS, ZACHARY GARFIELD, HANNAH HELSBY, RYAN JEPPSON, JAMES MARBICH, JON OGDEN, SHAR TORESDAHL, CODY YBARRA, and JOHN DOE DEFENDANTS 1-100,<br><br>Defendants. | CV-24-034-BU-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiff Mary Rogel, as a Personal Representative for the Estate of Michael Rogel ("Rogel"), deceased, filed a wrongful death action against the City of Bozeman ("Bozeman"), Officer Jon Ogden ("Ogden"), and seven other named Officers ("Officers"), (collectively "Defendants") on May 21, 2024. (Doc. 1.) The Court granted Defendants' motion to dismiss. (Doc. 38.) Rogel filed a First Amended Complaint ("FAC") on January 23, 2025. (Doc. 48.) Defendants filed their second motion to dismiss on February 20, 2025. (Doc. 51; Doc. 53; Doc. 55.)

1

Plaintiff Rogel opposes the motion, in part. (Doc. 59; Doc. 60.) The Court held a hearing on the motions on April 18, 2025. (Doc. 64.)

## BACKGROUND

Rogel lived in Bozeman, Montana. (Doc. 1, ¶ 19.) Rogel suffered a mental health emergency at his home on April 3, 2023. (*Id.*, ¶¶ 19–23.) Rogel called 911 seeking help. (*Id.*, ¶ 20.) Rogel's mother also called 911, informing the dispatcher of Rogel's mental health issues and requesting help for him. (*Id.*, ¶¶ 25–26.) Rogel left his home in his car with his dog before the Bozeman Police Department ("BPD") responded. (*Id.*, ¶ 35.) BPD pursued Rogel until Rogel's car became stuck in a snowbank at the end of a cul-de-sac. (*Id.*, ¶¶ 36–37.) BPD did not deploy their Special Response Team ("SRT") or Bearcat, BPD's armored truck, in response to Rogel's call. (*Id.*, ¶¶ 30–32.)

BPD officers drew their weapons and positioned themselves on the passenger side of Rogel's car. (*Id.*, ¶ 42.) BPD officers communicated with Rogel for approximately 30 minutes before officers fired non-lethal and lethal rounds into Rogel's car. (*Id.*, ¶¶ 41, 56–58, 73.) Rogel and his dog died at the scene. (*Id.*, ¶ 77.) Rogel had a firearm in his car. (*Id.*, ¶ 80.) The firearm was not loaded, and Rogel had no ammunition. (*Id.*)

Rogel's Estate has brought claims against Defendants for violation of his U.S. Constitutional rights under 42 U.S.C. § 1983, negligence, assault and battery, and

infliction of emotional distress, violation of Title II of the Americans with Disabilities Act ("ADA"), violation of Section 504 of the Rehabilitation Act, and punitive damages. (Doc. 48, ¶¶ 114–284.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does

not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

Bozeman moves the Court to dismiss four of Rogel's claims: (1) Rogel's ADA claim; (2) Rehabilitation Act claim; (3) Bozeman's direct liability for negligent hiring, training, retention, supervision, and discipline of officers; and (4) Montana Constitutional violations. (Doc. 52 at 10–23.)

Defendant Officers and Defendant Ogden allege that Mont. Code Ann. § 2-9-305 provides immunity from Rogel's state law claims. (Doc. 56 at 5–10; Doc. 54 at 9–12.) Defendant Ogden also asserts that qualified immunity shields him against Rogel's § 1983 monetary claims. (Doc. 54 at 10–16.) Defendant Ogden also moves to dismiss Rogel's punitive damage damages claim. (Doc. 54 at 12.)

The Court previously has dismissed Rogel's claim against Bozeman for negligent hiring, training, retention, supervision, and discipline because Bozeman admitted to vicarious liability. (*See* Doc. 38.) The Court also dismissed Rogel's Montana Constitutional claim. (*Id.*) Rogel concedes that the Court dismissed the claims but asserts that the constitutional standards are to establish the standard of

4

care for Rogel's negligence. (Doc. 59 at 13–14.) The law of the case controls and Rogel's negligent hiring, training, retention, supervision, and discipline, and Montana Constitutional claims will be dismissed. The Court understands that Rogel references the Montana Constitution only to establish the standard of care for Rogel's negligence claim.

The Court previously dismissed Rogel's state law claims against Defendant Officers and Officer Ogden and Rogel's § 1983 monetary claim against Officer Ogden. (*See* Doc. 38.) The Court rejects Rogel's attempt to reallege such claims. Rogel also concedes that Officer Ogden is not subject to punitive damages. (Doc. 60 at 2.) The Court next will address Rogel's ADA and Rehabilitation Act claims against Bozeman.

## I.     ADA Claim

Bozeman argues that the ADA prohibits discrimination against individuals with disabilities in the administration of public services. (Doc. 52 at 11.) Bozeman asserts Rogel must allege intentional discrimination, which requires deliberate indifference, to state a claim under the ADA. (*Id.* at 11–12.) Bozeman contends that the FAC lacks sufficient allegations of discriminatory intent or that Rogel's disability substantially limits a major life activity. (*Id.* at 12–13.)

Rogel must allege intentional discrimination on the part of Bozeman to recover monetary damages under Title II of the ADA or the Rehabilitation Act.

5

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see also Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) ("compensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent."). Intentional discrimination requires allegations of deliberate indifference. *Duvall*, 260 F.3d at 1138. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). Stated another way, deliberate indifference represents a higher standard than gross negligence and "requires a culpable mental state." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (internal citation omitted). Rogel must allege that Bozeman "recognize[d] the unreasonable risk and actually intend[ed] to expose [Rogel] to such risks without regard to the consequences to the [Rogel]." *Id.* (quoting *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996).

  A court must enforce deliberate indifference requirement at the pleadings stage. *See e.g.*, *Howze v. California Dep't of Corr.*, 765 F. App'x 399, 400 (9th Cir. 2019) (citing *Duvall*, 260 F.3d at 1135, 1138–40); *Greenstone v. Las Vegas Metro. Police Dep't*, 2024 WL 385213, at *14–15 (D. Nev. Jan. 31, 2024); *Hall v. City of Walnut Creek*, 2020 WL 408989, at *5–6 (N.D. Cal. Jan. 24, 2020). At the pleading stage, Rogel's allegations of deliberate indifference must be "more than

6

labels and conclusions" and allow the Court to reasonably infer that Bozeman stands liable for the alleged misconduct. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678.

Rogel relies predominantly on three cases to support the allegation that Bozeman acted with deliberate indifference. (Doc. 59 at 5–13.) Bozeman relies predominantly on two cases to support its argument. (Doc. 52 at 10–18.) A review of *Sheehan v. City and County of San Francisco*, *Greenstone*, and *Hall* proves instructive.

*Sheehan* involved a mentally ill woman, Teresa Sheehan, who lived in a group home in San Francisco. 743 F.3d 1211, 1215–16 (9th Cir. 2014). Sheehan was subject to welfare checks by her social worker. *Id.* Sheehan's social worker became concerned about Sheehan's deteriorating mental condition and called the police for assistance in transporting Sheehan to a mental health facility. *Id.* at 1216–17. The police officers who responded to the social worker's request entered Sheehan's room without a warrant, and Sheehan threatened the officers with a knife. *Id.* at 1218–19. The officers retreated, called for backup, and decided to re-enter the room before backup arrived. *Id.* at 1219–20. The officers discharged their weapons after re-entering and again being threatened with a knife by Sheehan. *Id.* Sheehan survived and filed a lawsuit, alleging violation of the ADA among other claims. *Id.* at 1220.

7

The *Sheehan* court did not address the issue of deliberate indifference. The Ninth Circuit instead answered in the affirmative to the question of whether the ADA applies to arrests. *Id.* at 1231–33. The Ninth Circuit further ruled that disputed material facts exists at the summary judgment stage as "to whether the city discriminated against Sheehan by failing to provide a reasonable accommodation during the second entry." *Id.* at 1233. *Greenstone* and *Hall* prove more instructive to the issue of deliberate indifference.

*Greenstone* addressed the officer-involved shooting of Seth Greenstone, who was suicidal and holding a knife. *Greenstone*, 2024 WL 385213, at *1. Greenstone called 911, "claiming he was suicidal and was holding a knife in an open field." *Id.* The Las Vegas Metropolitan Police Department ("LVMPD") dispatched two LVMPD officers. *Id.* A third LVMPD officer who had not been dispatched also responded. *Id.* The third officer arrived before the dispatched officers, pulled his service weapon, and ordered Greenstone to drop the knife. *Id.* Greenstone did not comply. *Id.* The officer fired two shots that incapacitated Greenstone. *Id.* The encounter lasted six seconds. *Id.* The plaintiff alleged that the third LVMPD officer acted unreasonably by not coordinating with other LVMPD officers, failing to use available cover, and not employing less-lethal options. *Id.* The plaintiff's lawsuit included an ADA claim. *Id.* at *2.

The court examined whether LVMPD or the officer acted with deliberate indifference toward Greenstone's disability, as required for an ADA claim. *Id.* at *14. The plaintiff alleged that the defendants had discriminated against Greenstone, who had schizophrenia and major depression, due to a failure to accommodate his disability during the police encounter. *Id.* at *15. The court applied the two-prong deliberate indifference test outlined in *Duvall*: (1) knowledge that a harm to a federally protected right is substantially likely; and (2) failure to act upon that likelihood. *Id.* (quoting *Duvall*, 260 F.3d at 1138). The court found the first factor met when LVMPD knew Greenstone's need for accommodation. *Id.* The court found the plaintiffs failed to meet the second prong. *Id.* The court reasoned that the plaintiffs' first amended complaint did "not include allegations demonstrating that LVMPD, through [the third officers'] actions, was deliberately indifferent to [Greenstone's] disability, as opposed to negligent." *Id.* (citing *Anderson v. Cal. Dep't of Corr. & Rehab.*, 2016 WL 7013246, at *2 (N.D. Cal. Dec. 1, 2016). *Hall* proved persuasive to the court in reaching its conclusion. *Id.*

*Hall* involved a fatal shooting outside the home of Scott and Taun Hall in Walnut Creek, California, where Walnut Creek Police Department ("WCPD") officers shot and killed Scott's and Taun's son, Miles Hall ("Hall"). 2020 WL 408989, at *1. Hall previously had been diagnosed with schizoaffective disorder.

9

*Id.* WCPD officer Tammy Keagy had informed Scott and Taun in a prior incident that future police responses would consider Hall's mental illness. *Id.* Hall was holding a gardening rod he referred to as his "staff from god" on the day of the fatal shooting. *Id.* Hall's directive to his parents to leave their home prompted them to call 911. *Id.*

Officer Keagy confirmed the purpose of the 911 call was to effectuate another Section 5150 hold, as the parents felt threatened and believed Hall could be a danger to others. *Id.* One WCPD sergeant and three WCPD officers arrived at the scene. *Id.* Hall began jogging around the scene after the WCPD officers arrived. *Id.* One of the WCPD directed Hall to stop and drop the staff. *Id.* Hall did not stop and began running toward the WCPD officers. *Id.* One of the WCPD officers fired a bean bag at Hall. *Id.* The bean bag failed to disable Hall and he continued running past the officers. *Id.* Two officers fired six shots from their service weapons. *Id.* Hall was struck and killed. *Id.*

The court applied *Duvall's* two-prong deliberate indifference test to the plaintiffs' ADA claim. *Id.* at \*5–6. The court found the plaintiffs met the first prong met, but not the second prong. *Id.* at \*6. The court noted that the plaintiffs' complaint alleged that WCPD "failed to train, supervise, or discipline officers in de-escalation tactics and that defendant officers failed to follow proper de-escalation tactics against a person suffering from schizoaffective disorder." *Id.* The

court reasoned that the complaint failed to meet *Duvall's* deliberateness standard because the complaint failed "to allege facts making deliberate indifference more than merely possible." *Id.*

Rogel meets the first prong for deliberate indifference. Rogel alleges that both Rogel and Rogel's mother called 911 and "alerted the public entity to [Rogel's] need for accommodation." *Duvall*, 260 F.3d at 1139; (Doc. 48, ¶¶ 21–28.) Rogel fails to meet the second prong for deliberate indifference. Rogel asserts that the FAC adequately alleged "deliberate indifference" as evidenced by the use of the term 19 times in the FAC. (Doc. 59 at 11.) A review of FAC reveals that the 19 references to deliberate indifference amounts to "labels and conclusions." *Twombly*, 550 U.S. 544, 555. "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

The facts surrounding Rogel's death are tragic. Considering the factual similarities of the present case to the facts of *Greenstone* and *Hall*, however, the Court cannot reasonably infer that Rogel has alleged facts to support deliberate indifference. Deliberate indifference represents a high standard — "higher than gross negligence" and requiring "a culpable mental state." *Patel*, 649 F.3d at 974. Rogel's deliberate indifference allegations stem from Bozeman's failure to adequately hire, train, supervise, and discipline BPD officers regarding responding

11

to persons suffering mental health crises and use of excessive force. Deliberate indifference "does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Duvall*, 260 F.3d at 1139. Even viewing the facts most favorably to Rogel, Bozeman's actions "may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction." *Id.* Rogel's ADA claim fails for the above reasons.

## II.    Rehabilitation Act

"Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act." *Duvall*, 260 F.3d at 1135. "[T]here is no significant difference in the analysis of rights and obligations created by the two statutes . . . and cases interpreting either statute are applicable and interchangeable." *Est. of Jackson v. City of Modesto*, 2021 WL 4819604, at *10 (E.D. Cal. Oct. 14, 2021) (citing *Douglas v. California Dept. of Youth Auth.*, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002)). Rogel's Rehabilitation Act claim fails for the above reasons.

## CONCLUSION

The Court determines that Rogel's ADA and Rehabilitation Act claims should be dismissed because Rogel has not alleged that BPD acted with deliberate indifference. The claims previously dismissed by the Court and those conceded by Rogel will be dismissed.

## ORDER

Accordingly, **IT IS ORDERED:**

1.) Defendant City of Bozeman's Motion to Dismiss (Doc. 51) is **GRANTED**.

2.) Defendant Officer Ogden's Motion to Dismiss (Doc. 53) is **GRANTED**.

3.) Defendant Officer's Motion to Dismiss (Doc. 55) is **GRANTED**.

4.) Plaintiff's claim for negligent hiring, training, retention, supervision, and discipline against Bozeman is **DISMISSED**. Montana Constitutional claims against Defendants are **DISMISSED.** Plaintiff's state law claims against Defendant Officers and Ogden are **DISMISSED**. Plaintiff's punitive damages claim against Officer Ogden is **DISMISSED**. Plaintiff's ADA and Rehabilitation Act claims are **DISMISSED** without prejudice.

DATED this 30th day of April, 2025.

_____
Brian Morris, Chief District Judge
United States District Court