# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL ROGEL, by and through its personal representative, MARY ROGEL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BOZEMAN, JUSTIN CHAFFINS, ZACHARY GARFIELD, HANNAH HELSBY, RYAN JEPPSON, JAMES MARVICH, JON OGDEN, SHAWN TORESDAHL, CODY YBARRA, and JOHN DOE DEFENDANTS 1-100,<br><br>Defendants. | CV-24-034-BU-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiff Mary Rogel, as a Personal Representative for the Estate of Michael Rogel ("Rogel"), deceased, filed an action against the City of Bozeman ("Bozeman"), Officer Jon Ogden ("Ogden"), and seven other named Officers ("Officers"), (collectively "Defendants") on May 21, 2024. (Doc. 1.) The Court granted Defendants' motion to dismiss. (Doc. 38.) Rogel filed a First Amended Complaint ("FAC") on January 23, 2025. (Doc. 48.) Defendants filed their second motion to dismiss on February 20, 2025. (Doc. 51; Doc. 53; Doc. 55.) The Court

1

granted the Defendants motion to dismiss. (Doc. 65.) Rogel filed a Second Amended Complaint ("SAC") on July 2, 2025. (Doc. 72.) Bozeman filed their third motion to dismiss on July 15, 2025. (Doc. 73.) Rogel opposes the motion. (Doc. 77.) The Court held a hearing on the motions on September 4, 2025. (Doc. 79.)

## BACKGROUND

Rogel was diagnosed with schizoaffective disorder. (Doc. 72 ¶ 33.) Rogel suffered a mental health emergency at his home in Bozeman, Montana on April 3, 2023. (*Id.* ¶¶ 27–31.) Rogel called 911 seeking help. (*Id.* ¶ 28.) Rogel's mother also called 911, informing the dispatcher of detailed information about Rogel's mental health crisis and requesting help for him. (*Id.* ¶¶ 37–38.) Rogel left his home in his car with his dog before the Bozeman Police Department ("BPD") responded. (*Id.* ¶ 47.) BPD pursued Rogel until Rogel's car became stuck at the end of a cul-de-sac. (*Id.* ¶ 49.) BPD did not deploy their Special Response Team ("SRT"), Bearcat, BPD's armored truck, or a mental health professional in response to Rogel's call. (*Id.* ¶¶ 39-46.)

BPD Officers drew their weapons and surrounded Rogel's car. (*Id.* ¶ 50.) Rogel had a firearm in his car that was unloaded and had no ammunition. (*Id.* ¶ 94.) BPD Officers communicated with Rogel for approximately 30 minutes before firing non-lethal "bean bags" and lethal rounds into Rogel's car. (*Id.*, ¶¶ 53, 68-71.) Rogel and his dog died at the scene. (*Id.* ¶ 91.)

Rogel's Estate has brought claims against Defendants, among others, for violation of Title II of the Americans with Disabilities Act ("ADA") and violation of Section 504 of the Rehabilitation Act ("RA") (*Id.* ¶¶ 133–306.) The Court previously dismissed Rogel's ADA and RA claims. (Doc. 65.) Defendant Bozeman seeks to dismiss Rogel's ADA and RA claims realleged in the SAC. (Doc. 73.) Defendant Officers joined in support of Bozeman's Third Motion to Dismiss. (Doc. 75.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires claimants to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a plausible claim for relief on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard does not require probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must "take[] as true and construe [] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

Bozeman moves the Court to dismiss two of Rogel's re-alleged claims contained in the SAC: (1) Rogel's ADA claim and (2) Rogel's RA claim. (Doc. 73.) The Court rejects Rogel's attempt to reallege such claims. The Court will address the deficiencies of Rogel's ADA and RA claims.

### I.     ADA Claim

Rogel must allege intentional discrimination on the part of Bozeman to recover monetary damages under Title II of the ADA or the Rehabilitation Act. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Intentional discrimination requires allegations of deliberate indifference. *Id*. Deliberate

indifference requires a showing of "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id*. at 1139. The Court previously determined that Rogel successfully had alleged that Bozeman possessed knowledge of Rogel's disability and need for accommodation to satisfy the first element of deliberate indifference. (Doc. 65 at 9-11.) Bozeman argues that the SAC lacks sufficient factual allegations to support the second element of deliberate indifference, despite added language and legal citations. (Doc. 74 at 6-17.) The Court agrees.

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). Stated another way, deliberate indifference represents a higher standard than gross negligence and "requires a culpable mental state." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (internal citation omitted). Rogel must allege that Bozeman "recognize[d] the unreasonable risk and actually intend[ed] to expose [Rogel] to such risks without regard to the consequences to the [Rogel]." *Id.* (quoting *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996).

A court must enforce the deliberate indifference requirement at the pleadings stage. *See e.g.*, *Howze v. California Dep't of Corr.*, 765 F. App'x 399, 400 (9th Cir. 2019) (citing *Duvall*, 260 F.3d at 1135, 1138–40); *Greenstone v. Las Vegas*

5

*Metro. Police Dep't*, 2024 WL 385213, at *14–15 (D. Nev. Jan. 31, 2024); *Hall v. City of Walnut Creek*, 2020 WL 408989, at *5–6 (N.D. Cal. Jan. 24, 2020). Rogel's allegations of deliberate indifference must be "more than labels and conclusions" at the pleading stage. *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. These allegations must allow the Court to reasonably infer that Bozeman stands liable for the alleged misconduct. *Id*.

Bozeman relies on two cases previously considered by the Court, *Hall* and *Greenstone*. (Doc. 74 at 9-13.) Rogel relies on *Greenstone* to support its contentions that the SAC should survive a motion to dismiss. (Doc. 77 at 9-11.) An additional short review of *Greenstone* and *Hall* proves instructive on the issue of deliberate indifference.

*Hall* involved a fatal shooting outside the home of Scott and Taun Hall where Walnut Creek Police Department ("WCPD") officers shot and killed Miles Hall ("Hall"). 2020 WL 408989, at *1. Hall had been diagnosed with schizoaffective disorder. *Id*. WCPD officer Tammy Keagy previously informed Scott and Taun that future police responses would consider Hall's mental illness. *Id*. Hall was holding a gardening rod he referred to as his "staff from god." *Id*. Hall's parents called 911. *Id*. WCPD officers arrived at the scene and began directing Hall to drop the staff. *Id*. Hall did not comply and began running toward

the WCPD officers. *Id.* One of the WCPD officers fired a bean bag at Hall that failed to disable Hall. *Id.* Two officers fired six lethal shots at Hall. *Id.*

The court applied *Duvall's* two-prong deliberate indifference test to the plaintiff's ADA claim. *Id.* at *5–6. Like here, the court determined the plaintiffs met the first prong met, but not the second prong. *Id.* at *6. The court noted that the complaint alleging "that defendant officers failed to follow proper de-escalation tactics against a person suffering from schizoaffective disorder" fell short of *Duvall*'s deliberate indifference standard. *Id.*

Rogel cannot distinguish the facts from *Hall*. The Officers failed to promptly use de-escalation tactics in response to Rogel's mental health crisis. The SAC alleges the Officers did not employ known de-escalation tactics such as seeking a mental health professional, using the mobile crisis unit and/or employing SRT, or employing the Bearcat. The SAC includes allegations that "Ogden did not proactively choose to activate SRT and bring the Bearcat to the scene," "BPD, Toresdahl, and Ogden should have immediately deployed the SRT and Bearcat," and "Chaffins and Helby failed to properly communicate with Mr. Rogel to deescalate the interaction or navigate Mr. Rogel's mental health emergency." (Doc. 48 ¶¶ 44, 45, and 66.) These decisions do not rise to the stringent standard of deliberate indifference. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 410. These allegations prove insufficient as "a failure to act must be a result of

conduct that is more than negligent[] and involves an element of deliberateness." *Hall*, 2020 WL 408989, at *16 (quoting *Duvall*, 260 F.3d at 1139). The Officers choices and failures on April 3, 2023, more appropriately resemble the standard of negligence rather than deliberate indifference. *Patel,* 648 F.3d at 974.

*Greenstone* addressed the officer-involved shooting of the decedent, who was holding a knife. *Greenstone*, 2024 WL 385213, at *1. The decedent called 911, "claiming he was suicidal and was holding a knife in an open field." *Id.* The Las Vegas Metropolitan Police Department ("LVMPD") dispatched officers to the scene. *Id.* One officer pulled his service weapon ordering the decedent to drop the knife. *Id.* The decedent did not comply. *Id.* The officer fired two shots that killed the decedent. *Id.* The decedent's estate brought suit. *Id*. The complaint included an ADA claim and alleged that the LVMPD officer had acted unreasonably by failing to use available cover and not employing less-lethal options. *Id.*

The court applied the two-prong deliberate indifference test outlined in *Duvall*. *Id.* The court determined that the decedent's estate had failed to meet the second prong. *Id.* The court reasoned that the first amended complaint did "not include allegations demonstrating that LVMPD, through [the officers'] actions, was deliberately indifferent to [Greenstone's] disability, as opposed to negligent." *Id.* (citing *Anderson v. Cal. Dep't of Corr. & Rehab.*, 2016 WL 7013246, at *2 (N.D. Cal. Dec. 1, 2016).

8

The decedent's estate filed a second amended complaint in attempts to cure the deficiencies with the ADA claims. (Doc. 77 at 9.) The defendant in *Greenstone* did not file a renewed motion to dismiss. (Doc. 78 at 7.) The defendant in *Greenstone* answered the second amended complaint and promptly filed a motion for summary judgment. (*Id.*) The parties ultimately settled the case, without the court deciding the merits of *Greenstone*'s amended ADA claims or the sufficiency of the renewed ADA allegations. (*Id.*) (Civil Docket, *Greenstone v. LVMPD*, at 6-7.)

Rogel relies on *Greenstone*'s second amended complaint in wording its new allegations of deliberate indifference. (Doc. 77 at 9.) Rogel contends that pleading real-time, specific decisions made by the Officers to disregard Rogel's known accommodation cures the deficiencies of the FAC. (*Id.* at 10.) Rogel cites the following claims to show deliberate indifference: "Bozeman had the available resources and tools to accommodate Mr. Rogel's needs, but it intentionally chose to not use those resources and tools such as the mobile crisis unit and/or SRT;" "Bozeman chose to subject Mr. Rogel to increase risks by not accommodating his mental health disability;" and "Bozeman's violations of Title II of the ADA were taken with deliberate indifference to the likelihood that its actions and inactions would increase the risks to Mr. Rogel, including his death;" (Doc. 72 ¶¶ 223, 229, 242, 279, 291.)

The alleged real-time choices made by the Officers during the mental health crisis of Rogel still do not plausibly establish deliberate indifference. Rogel continues to rely on conclusory language and labels in the SAC. A review of SAC reveals that Rogel's reworded allegations no longer only reference "deliberate indifference," but allege now that the Officers "intentionally failed," "intentionally chose," or "intentionally decided" to not take specific actions while responding to Rogel. (Doc. 72 ¶¶ 50-51, 248, 289.)

As previously determined by the Court, references to conclusory language such as "deliberate indifference" proves insufficient to survive a motion to dismiss. *See* Doc. 65 at 11. The references to alleged intentional acts by the Officers continue to amount to "labels and conclusions" rather than setting forth new factual allegations of deliberate indifference. *Twombly*, 550 U.S. 544, 555. "Conclusory allegations and unreasonable inferences . . . are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Rogel failed to provide new facts to show that the Officers acted with deliberate indifference to Rogel's known disability.

Deliberate indifference represents a high standard — "higher than gross negligence" and requiring "a culpable mental state." *Patel*, 649 F.3d at 974. Rogel's deliberate indifference allegations stem from alleged negligent conduct of the Officers in response to Rogel's mental health crisis. The alleged actions by the

Officers to not employ prompt de-escalation tactics, even with the insertion of the words of "intentionally" do not rise to the high standard of deliberate indifference. Rogel's ADA claims fail for the above reasons.

### II.     Rehabilitation Act

As previously discussed by the Court, Rogel's Rehabilitation Act claims require the same analysis as the ADA claim. *See Est. of Jackson v. City of Modesto*, 2021 WL 4819604, at *10 (E.D. Cal. Oct. 14, 2021) (citing *Douglas v. California Dept. of Youth Auth.*, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002)). Rogel's Rehabilitation Act claim fails for the above reasons.

### III.    Relevance to negligence

Rogel argues in the alternative that the ADA and RA elements establish standards of care relevant to Rogel's negligence and/or negligence per se claims. (Doc. 77 at 14-15.) Rogel did not timely allege negligence per se claims in its SAC. The Court requires parties asserting negligence per se to sufficiently assert and allege such claims in its complaint. *Albert v. Mont. Dep't of Corr.*, No. CV 17-00069-H-DLC-JTJ, 2019 U.S. Dist. LEXIS 65676, at *12 (D. Mont. Mar. 14, 2019), *adopting Findings and Recommendations in full*, *Albert v. Mont. Dep't of Corr.*, No. CV 17-69-H-BMM, 2019 U.S. Dist. LEXIS 65101, at *1 (D. Mont. Apr. 16, 2019). Rogel did not allege a claim for negligence per se. Rogel further has not sufficiently alleged a violation of the ADA or RA, as explained above. The ADA and RA claims are

unnecessary to inform the jury of negligence or establish the elements of a negligence per se claim. The ADA and RA claims must be dismissed.

## IV. Injunctive relief

Lastly, Rogel seeks to retain the ADA and RA claims to support seeking injunctive or declaratory relief, as the deliberate indifference standard applies only to monetary relief. (Doc. 77 at 15.) "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). A party seeking prospective injunctive relief must show they face a "real or immediate threat . . . that he will again be wronged in a similar way" in the future. *Mayfield*, 599 F.3d at 970 (citing *Lyons*, 461 U.S. at 111). For example, in *Chapman v. Pier 1 Imports (U.S.) Inc.*, the court noted an ADA plaintiff can show future injury to seek injunctive or declaratory relief "when he intends to return to a noncompliant accommodation." 631 F. 3d 939, 949-50 (9th Cir. 2011). The court in *Antoninetti v. Chipotle Mexican Grill, Inc.*, noted however, that a deceased party cannot seek injunctive relief. No. 05cv01660 BTM (WMc), 2012 U.S. Dist. LEXIS 190562, at **6-7 (S.D. Cal. Mar. 21, 2012). "Injunctive relief obviously would be ineffectual as to Mr. Antoninetti because he is now deceased. His estate lacks standing to pursue an injunction

because it cannot show a threat to its interests or that any redress would accompany a favorable judgment." *Id*.

Tragically here, Rogel is deceased. Rogel's Estate cannot show the likelihood of future injury or the return to a noncompliant accommodation under the ADA and RA claims. Injunctive or declaratory relief would not properly redress Rogel's claims. Rogel's ADA and RA claims for injunctive or declaratory relief must be dismissed.

## CONCLUSION

The Court determines that Rogel's ADA and Rehabilitation Act claims should be dismissed because Rogel has not alleged that Bozeman acted with deliberate indifference.

## ORDER

Accordingly, **IT IS ORDERED** Defendant City of Bozeman's Motion to Dismiss Rogel's Americans with Disabilities Act and Rehabilitation Act claims (Doc. 73) is **GRANTED**.

DATED this 24th day of September 2025.

_____
Brian Morris, Chief District Judge
United States District Court